Daniel D. PHILLIPS, Appellant,

v.

Lynn F. FALLEN, Director of Division
of Child Support Enforcement,
Respondent.

No. 81490.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1999.

Ronald K. Barker, Kansas City, for Appellant.

Michael S. Kisling, Melanie G. Moffat, Jefferson City, for Respondent.

PER CURIAM.[1]

A Washington state child support enforcement agency sent a child support order entered by a Washington state court to Missouri for enforcement. The director of the division of child support enforcement entered an administrative order in accordance with the court order. *Section 454.467.1.*[2] Daniel Phillips contested the order, and a hearing was held. *Section 454.467.4.* The hearing officer affirmed the director's decision and entered findings of fact and conclusions of law, which are treated as the director's decision. *Id.* Phillips sought judicial review of the administrative decision. The trial court affirmed the decision of the director. That judgment is reversed, and the case is remanded.

Phillips and Kimbra Owen were married in 1983. A son was born during the marriage. The couple divorced in Kansas in 1989. As a part of the divorce decree, Phillips was ordered to pay child support of $750 per month. The Kansas court later changed this amount to $403 per month. In 1995, Owen filed a petition in Washington to register and modify the Kansas child support order. A default judgment was entered. The judgment found four bases for the court's jurisdiction over Phillips:

(a) Pursuant to [Wash. Rev.Code sec.] 26.21.075(6), [Owen][3] asserts jurisdiction

---

1. The appeal in this case was originally decided by the Court of Appeals, Western District, in an opinion written by the Honorable Paul M. Spinden. Portions of that opinion are incorporated herein without further attribution.

2. All statutory citations are to RSMo 1994 unless otherwise specified.

3. Kimbra Lee Owen is Phillips' former wife and mother of the child for whose benefit the child support order was entered.

is appropriate in that the parties engaged in sexual intercourse in this state, during a family visit to Wenatchee and Seattle in November 1982, and the child ... (d.o.b. 8/23/83) may have been conceived as a result of that act;

(b) [Phillips] has consented to jurisdiction by entering into a Washington State Parenting Plan; and

(c) State of Kansas issued original order, but has since closed its case, finding that as both parties have moved out of the state, jurisdiction is no longer with the Kansas court.[4] ...

(d) [Owen] and child are residents of the state of Washington, and have been for three years.

The judgment also found back support amount due of $5,871 and interest of $483. The judgment increased the amount of child support ordered to $2,108 per month.

■ Washington filed its request for enforcement with the director. Once the Washington request was acted upon by the Missouri director, Phillips was limited in his defense to asserting an error in the amount of arrearages or the identity of the obligor. *Section 454.467.4*. Phillips contends that the amount of the arrearage is in error because the Washington court lacked personal and subject matter jurisdiction over him. The director contends the Washington judgment is entitled to full faith and credit.

■ This Court reviews the director's *decision*—not the judgment of the circuit court. In reviewing the director's decision, the Court may not determine the weight of the evidence or substitute its discretion for that of the administrative body; the Court's function is to determine primarily whether competent and substantial evidence upon the whole record supports the decision, whether the decision is arbitrary, capricious, or unreasonable, and whether the director abused discretion. Questions of law are matters for the independent judgment of this Court. *Psychcare Mgt. v. Dept. of Social Services*, 980 S.W.2d 311, 312 (Mo. banc 1998) (citations omitted).

■ Missouri is obligated to give full faith and credit to a judgment of a sister state unless that judgment is void for lack of jurisdiction over the person or over the subject matter, or is obtained by fraud. *Shaffer v. Heitner*, 433 U.S. 186, 210, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Pennoyer v. Neff*, 95 U.S. 714, 729, 24 L.Ed. 565 (1877); *Scott v. Scott*, 441 S.W.2d 330, 332 (Mo.1969). Because Phillips did not litigate the question of subject matter jurisdiction in Washington, he is free to do so here. *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Phillips correctly argues that under the Uniform Interstate Family Support Act (UIFSA), adopted by Washington, the Washington court had no authority to modify a foreign judgment because the statutory criteria for modification did not exist.

■ The Uniform Reciprocal Enforcement of Support Act (URESA), in effect in Missouri at the time of this action, and UIFSA provide a means for modifying and enforcing child support obligations in addition to simple registration of child support orders.[5] See *Kulko v. Superior Court of*

4. The Kansas courts relinquished jurisdiction over the matter in 1995 after Phillips and Owen moved out of the state—Phillips to Missouri and Owen to Washington.

5. When this action began in Washington, legislatures in Kansas, Washington and Missouri had enacted different versions of uniform child support enforcement statutes. Washington had adopted UIFSA, which had more stringent criteria than that of URESA for permanent modification of foreign support judgments. Washington's enactment of UIFSA superseded its prior enactment of the Uniform Reciprocal Enforcement of Support Act of 1950. When Kansas declined to continue exercising jurisdiction over the case in April 1995, the applicable Kansas law was the Revised Uniform Reciprocal Enforcement of Support Act of 1968, which permitted multiple states to issue child support orders for the same parties. When Washington issued its modification of support order in July 1996,

*California, in and for the City and County of San Francisco*, 436 U.S. 84, 98–100, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). These uniform laws provide an interstate mechanism for initiating an action for child support in the obligee's state of residence and then taking the child support enforcement action to the obligor's state of residence. *Kulko* at 98–99, 98 S.Ct. 1690. The responding court in a URESA action has the ability to require an obligor to pay an amount different than the one specified in the underlying support order without modifying the order. *State ex rel. Osborne v. Goeke*, 806 S.W.2d 670, 672 (Mo. banc 1991).

"Except as otherwise provided in this article, a tribunal of [Washington] shall recognize and enforce, *but may not modify*, a registered order if the issuing tribunal had jurisdiction." *Wash. Rev.Code section 26.21.500(3) (1994)* (emphasis added). Under UIFSA, adopted by Washington, a party or child support enforcement agency may petition the courts to modify a child support order issued by another jurisdiction. Wash. Rev.Code section 26.21.580 (1994) provides:

(1) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if, after notice and hearing, it finds that:

(a) The following requirements are met:

(i) The child, the individual obligee, and the obligor do not reside in the issuing state;

(ii) A petitioner who is a nonresident of this state seeks modification; and

(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(b) An individual party or the child is subject to the personal jurisdiction of

the tribunal and all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this state may modify the support order and assume continuing, exclusive jurisdiction over the order.

These provisions require that an action to modify child support be initiated in the state of the obligor's residence unless the obligor consents to Washington's jurisdiction. The elements of subsection (1)(a) and subsection (1)(b) were not fulfilled in this case. UIFSA did not authorize the Washington court to modify the child support order issued by the Kansas court.

Wash. Rev.Code section 26.21.025 (1994), a UIFSA statute, states, "Remedies provided by this chapter are cumulative and do not affect the availability of remedies under other law." However, as noted in the comments to section 103 of the UIFSA, this section is not applicable to interstate parties once a child support order has issued. "[I]n further litigation the tribunal must apply [UIFSA]'s provisions for enforcement of an existing order and limit modification to the strict standards of UIFSA;" i.e., Wash. Rev.Code section 26.21.580 (1994).

The Kansas child support order was registered in Washington under UIFSA. Wash. Rev.Code section 26.21.580 (1994) provides the means for modifying a support order entered by another state. The provisions of that section were not met. Wash. Rev.Code section 26.21.025 (1994) did not authorize the Washington court to modify the Kansas support order. The Washington court lacked subject matter jurisdiction to modify the Kansas support order. To the extent the director entered the enforcement order on the basis of the amount of child support as increased by the Washington court, the order is erroneous.

---

however, Kansas had enacted UIFSA. When Washington asked Missouri authorities to enforce its order, the applicable Missouri statute was based on the Uniform Reciprocal Enforcement of Support Act of 1950, *sections*

*454.010 to 454.360,* which governed all actions initiated prior to January 1, 1997. After January 1, 1997, UIFSA, sections 454.800 to 454.980, took effect. *Section 454.997,* RSMo Supp.1996.

■ The director's enforcement order also was based on the arrearage (back support) and interest amounts contained in the Washington state judgment. As to the arrearage and interest, the Washington court had subject matter jurisdiction. *Wash. Rev.Code section 26.21.500(1994).*

■ Phillips argues that the Washington court lacked personal jurisdiction as to the arrearage and interest. The determinative issue is whether the Washington court's jurisdiction over Phillips under its "long-arm" statutes was consistent with due process. Under Washington's statutes governing modification of child support obligations generally, "the practice in civil action ... govern[s] ... except that trial by jury is dispensed with." *Wash. Rev. Code section 26.09.010(1) (1994).* The Washington civil procedure code provides for jurisdiction over nonresidents in Wash. Rev.Code section 4.28.185 (1994), which says:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . . .

(e) The act of sexual intercourse within this state with respect to which a child may have been conceived[.]

■ A court exercising long-arm jurisdiction over a nonresident must satisfy both the provisions of Wash. Rev.Code section 4.28.185 (1994) and provide sufficient due process. *In re Marriage of Yocum,* 73 Wash.App. 699, 870 P.2d 1033, 1035 (1994). To establish jurisdiction in a Washington court, a petitioner need only demonstrate by prima facie evidence that a nonresident respondent commits one of the acts enumerated in the long-arm statute, and the Washington courts deem the peti-

tioner's averments to be true for purposes of determining jurisdiction. *Id.* (citing *Lewis v. Bours,* 119 Wash.2d 667, 835 P.2d 221, 223 (1992)).

In her petition for child support registration and modification, Owens asserts jurisdiction on the basis of: (1) Phillips' engaging in sexual intercourse in Washington in November 1982 during which the couple's child "may have been conceived;" (2) Phillips' consenting to jurisdiction by virtue of entering into a parenting plan, and (3) Kansas' declining jurisdiction over the case. Phillips did not contest the petition, so the Washington court heard no evidence contradicting Owen's averments.

In response to Owen's contention that the couple engaged in sexual intercourse in Washington, Phillips testified at the administrative hearing that he did not remember it, although he acknowledged visiting Washington with Owen during Thanksgiving 1982. He asked the administrative hearing officer to review medical records of Owen's pregnancy and the child's birth. Phillips contended that the records showed that the child's conception could not have occurred during the couple's visit to Washington. While the medical records suggest that the child was born prematurely by approximately three weeks, these records were not authenticated, and Phillips did not present any medical testimony supporting his interpretation of them. We discern no basis for concluding that it was erroneous to reject Phillips' interpretation. The child was born 271 days after Thanksgiving 1982. A normal gestational period is 280 days, but a range of 250 to 310 days is not abnormal.[6]

The facts of *Lake v. Butcher,* 37 Wash. App. 228, 679 P.2d 409, 411 (1984), are quite similar to this case. In *Lake,* a Washington appellate court considered a nonresident father's claim that jurisdiction based on an act of sexual intercourse performed in Washington was improper because Washington was an inconvenient fo-

---

**6.** Blakiston's Gould Medical Dictionary 556    (4th ed.1979).

rum and that the mother had "wandered" into the state. The parties had married in Minnesota in 1978 and had divorced in Iowa in 1980. For one month, beginning on November 7, 1978, the couple had cohabited in King County, Washington, and a child was born on August 15, 1979, in Seattle. The father filed a motion to dismiss, which the court denied. The father did nothing else to respond to the mother's petition that Butcher be declared the father of her child and that he be ordered to provide for custody and child support. The court entered a default judgment against Butcher. *Id.* Observing the due process requirements set forth in *Kulko,* 436 U.S. at 91, 98 S.Ct. 1690 and *Tyee Construction Co. v. Dulien Steel Products, Inc., of Washington,* 381 P.2d at 245 (Wash.1963),[7] the *Lake* court said:

> Obtaining personal jurisdiction over Butcher on the basis of [Wash. Rev. Code sec.] 26.26.080(2) is proper. First, Butcher was served and had actual knowledge of the action. Second, the cause of action arises from Butcher's act of sexual intercourse in this state. Finally, it does not offend traditional notions of fair play or substantial justice to hold that a man who fathers a child in the state has established sufficient contacts with the state to support the assertion of personal jurisdiction over him in an action concerning that child.

*Lake,* 679 P.2d at 411–12. See also *In re the Marriage of Myers,* 92 Wash.2d 113, 594 P.2d 902 (1979) (jurisdiction based on sexual intercourse in Washington resulting in a child's conception and couple's living in a marital relationship in Washington).

In Phillips' case, as in *Lake,* Phillips was served and had actual notice of the proceeding to modify his child support obli-

gation, and the child support action arose as a result of Phillips' obligation to support his son. He did not overcome adequately Owen's averment that the couple had sexual intercourse in Washington, which may have resulted in their child's conception.

Owen also asserts that the Washington courts had jurisdiction over Phillips because of his participation in a Washington parenting plan entered by the King County, Washington, superior court on February 4, 1994. The parenting plan specified a schedule for Phillips to visit his son. Although Phillips contends that he participated only by means of special appearance to contest jurisdiction, we find nothing in the record supporting his contention. Further, although Phillips contends he sought no affirmative relief from the Washington court, the original custody decree entered by the Kansas courts did not specify a visitation schedule, and Phillips first raised the issue of modifying visitation in a petition to the Kansas court. Owen petitioned the Kansas court to decline jurisdiction in favor of Washington on the ground that Kansas no longer had jurisdiction under the Uniform Child Custody Jurisdiction Act. She averred to the Kansas court that Washington did have jurisdiction as the child's home state.

*Livingston v. Livingston,* 43 Wash.App. 669, 719 P.2d 166, 167 (1986), also provides guidance. In that case a father residing in Washington sued a nonresident mother for payment of child support. The mother contested jurisdiction but asked for enforcement of a New York decree granting visitation and awarding her attorney fees. The superior court dismissed the father's petition for child support for lack of jurisdiction over the mother but granted the

---

**7.** The Washington Supreme Court set out the due process requirements for the exercise of personal jurisdiction under the long arm statute: "The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the

forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." *Tyee,* 381 P.2d at 251.

mother's motion to enforce visitation. The father appealed. The *Livingston* court held that a defendant may waive the lack of· jurisdiction by asking for affirmative relief from the court. *Id.* at 167. It found that the mother had sought affirmative relief of the superior court to enforce visitation, which arose out of the same decree from which the father was seeking child support, and that "the judge determined the conditions under which visitation was appropriate under the present circumstances." *Id.* at 168. Under these circumstances, the court said, the mother waived her defense of lack of personal jurisdiction on the issue of child support. *Id.*

In Phillips' case, although the issue of visitation specified by the enactment of the Washington parenting plan and the subsequent petition for modification of child support arose from the same decree, these issues were litigated in Washington in two separate actions at two different times. Whether a court in Washington would find that jurisdiction was waived consistent with *Livingston* is speculative. However, even if Phillips' seeking affirmative relief in the visitation plan did not, by itself, waive personal jurisdiction in the support proceeding, it is sufficient evidence of Phillips' additional contact with the forum state to support the finding required by the third step of the *Tyee* due process analysis. *Tyee* at 251.

Phillips argues that personal jurisdiction cannot be conferred on the basis of his "glancing presence" in the state of Washington and relies on *In re the Marriage of Peck,* 82 Wash.App. 809, 920 P.2d 236 (1996). This case does not aid him, however, because the nonresident father in it performed no act enumerated in Washington's long-arm jurisdictional statute and sought no affirmative relief of the Washington court. The father's only "contact" with Washington was to visit his former wife's family.

■ "[A] foreign judgment, regular on its face, ... is entitled to a strong presumption that the foreign court had jurisdiction both over the parties and the subject matter and that the court followed its laws and entered a valid judgment." *Johnson v. Johnson,* 770 S.W.2d 483, 485 (Mo.App.1989). Phillips did not attack the Washington order as irregular on its face, so his burden was to overcome the presumption of validity and jurisdiction with "the clearest and most satisfactory evidence." *Trumbull v. Trumbull,* 393 S.W.2d 82, 89 (Mo.App.1965). He did not meet this burden. Because the petition for registration and modification and the Washington court's judgment listed bases of jurisdiction that Phillips failed to contest in Washington, and because it was possible that the child was conceived in the state of Washington and Phillips had other contacts with the state of Washington that did not offend traditional notions of fair play under the due process clause, Phillips failed to rebut the presumption of validity of the Washington order as to the arrearage and interest.

The remaining issues raised by Phillips have been reviewed, but in light of the disposition are not further discussed.

In conclusion, the Washington court had no subject matter jurisdiction to modify the Kansas child support amount. The Washington court's conclusion that it did have subject matter and personal jurisdiction to determine the amount of the arrearage and interest due is entitled to full faith and credit. Although the director's order properly considered the arrearage and interest, the director improperly included the Washington court's modified child support amount as a factor in the enforcement order.

The judgment is reversed, and the case is remanded.

All concur.