L & L WHOLESALE, INC., Plaintiff–Appellant,

v.

George L. GIBBENS and April R. Gibbens, Defendants–Respondents.

No. 24989.

Missouri Court of Appeals, Southern District, Division Two.

April 8, 2003.

Petition for Rehearing and Transfer Denied April 30, 2003.

Paul D. Link, Husch & Eppenberger, LLC, Springfield, Guadalupe J. Sisneros, Moye, Giles, O'Keefe, Vermeire & Gorrell LLP, Denver, CO, for Appellant.

Glen P. Green, Thomas M. Benson, Lowther Johnson, LLC, Springfield, for Respondents.

JAMES K. PREWITT, Presiding Judge.

L & L Wholesale, Inc., ("L & L") sought to register a Colorado default judgment against Missouri residents George L. Gibbens and April R. Gibbens ("the Gibbens" when referred to together, by their first names when discussed individually) in Greene County, Missouri. The trial court sustained the Gibbens' motion to vacate the registration of the foreign judgment. With three points relied on, L & L contends that the trial court erred because Colorado possessed personal jurisdiction over the Gibbens due to agreements they signed that contained a forum selection clause; personal jurisdiction was established by Colorado's long-arm statute and the Colorado court also had subject matter jurisdiction over the matter; and the doctrine of res judicata prohibited the Gibbens from relitigating the issues of personal and subject matter jurisdiction in the Missouri action.

The trial court's docket entry states that the Gibbens' "motion to vacate registration of foreign judgment is sustained [and] [r]egistration of the Colorado judgment is vacated." The trial court judgment is presumed correct. *General Motors Acceptance Corp. v. Crawford,* 58 S.W.3d 529, 532 (Mo.App.2001). We must affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 531. We view the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences, disregarding any contrary evidence and inferences. *Id.* at 531–32. The trial court's judgment will be affirmed under any reasonable theory supported by the evidence. *Kerr v. Louderback,* 35 S.W.3d 511, 513 (Mo.App.2001).

L & L, a Colorado corporation whose principal place of business is in Denver, Colorado, distributes Tri–Star vacuum cleaners in a six-state region. Brian Lamke, who is married to George's cousin Linda, is the president of L & L. While attending George and April's wedding,

Lamke offered George a job working for J & J Systems ("J & J"), an L & L distributorship located in Springfield, Missouri. At the time George, who has a high school education, was in between jobs having most recently worked in construction and as a commercial pipe fitter. April, who had attended one year of college, was a letter carrier.

After working for J & J for approximately one year, George left because he was not making any money. However, Lamke later contacted George to ask if he and April were interested in taking over the J & J distributorship. This working relationship started with George acting as the manager of J & J, and the plan was for the Gibbens to eventually have ownership in a distributorship.

In April 1997, two or three months prior to signing any documentation regarding that distributorship, based on Lamke's instructions, the Gibbens found a location for the business, signed a lease for the building, and began operating the business. Prior to opening the distributorship, George went to Colorado for three weeks for training provided by L & L.

The next step in the distributorship process was the formation of a corporation called Northstar Technologies ("Northstar"), which was incorporated by an attorney for L & L. Northstar was incorporated as a Colorado corporation and, per Lamke's instructions, George registered Northstar in Missouri as a foreign corporation registered to conduct business in Missouri. Northstar was the only L & L distributorship located outside of Colorado that was incorporated as a Colorado corporation.

L & L owned 79% of stock in Northstar and the Gibbens owned 21%. Lamke was listed as the sole director of Northstar when it was incorporated, although George was later named a director. George and April were both employees of Northstar, and George was listed as president of the corporation and April as its secretary.

In June 1997, two months after the Gibbons began operating the business, Lamke brought the distributorship documents to the location of the Springfield, Missouri business where they were notarized by Danny Hankinson, an employee who worked for George and J & J. Hankinson notarized the documents according to Lamke's instructions, and the notarization was accomplished prior to anyone signing the documents. The documents were not left for the Gibbens to review.

At two or three o'clock the next morning, the Gibbens and the Lamkes (Lamke and his wife Linda) were in the Lamkes' hotel room and the documents were produced for the Gibbens to sign, both individually and as officers of Northstar. All parties agreed that there was no negotiation of the terms of the documents, which included a distributorship agreement between L & L and Northstar and the Gibbens, a promissory note, and an addendum that provided that the Gibbens were guaranteeing the distributorship. The documents contained a forum selection clause designating Jefferson County, Colorado as the forum, and a choice of law provision stipulating that Colorado law would govern any legal action relating to the documents.

Lamke insisted that the Gibbens sign the documents, even though there were blanks left in the documents, specifically in the promissory note. During the late night/early morning meeting in the Lamkes' hotel room, Lamke vaguely explained some of the provisions, prefacing his explanations with comments such as "Don't worry about it. We're family" Lamke also made it clear to the Gibbens that if they did not sign the documents, they would not be able to continue in the

business they had been operating for the past two months. Lamke told the Gibbens that they either had to sign the contracts or Lamke would be "down the road." Lamke refused to provide the Gibbens with copies of the signed documents, reasoning that he needed to fill in the blanks later.

After the documents had been signed, Lamke retained control of most aspects of the distributorship, including maintaining the company checkbook and making decisions on who would be paid. On a few occasions, the Gibbens had to obtain counterchecks from the bank in order to pay employees their earnings. Lamke's general manager, Jim Kelley, informed George that if he and April wanted to receive free machines from L & L, L & L would handle all monies. Kelley also told George that "[W]e're (L & L) running this business."

Lamke continued to provide the Gibbens vacuum cleaners, and used his control of the company's checkbook to pay L & L for them, even though the Gibbens' business allegedly reached a point that it was behind in withholding and sales tax deposits. George testified that L & L was paid for product that the Gibbens' distributorship never received.

On April 3, 1998, L & L filed suit against the Gibbens in Colorado alleging that the Gibbens had failed to make four payments on the note. The Colorado complaint contained claims of relief for breach of contract, breach of fiduciary duty, conversion, replevin, dissolution of Northstar, and injunction. Also in April 1998, the Gibbens signed documents resigning as officers and employees of Northstar, and George also resigned as a director of the corporation.

When the Gibbens were served with the papers associated with the Colorado lawsuit, through a reference provided by their Springfield, Missouri attorney, they did contact a Colorado attorney, but determined they could not afford the fees associated with that representation. In May 1998, they did, however, file a pro se motion to dismiss in which they argued that the Colorado court lacked jurisdiction over them because they were not citizens of that state, were not served in the state, and had neither consented to nor availed themselves of the jurisdiction of the state. They further contend in their motion that the Colorado court lacked subject matter jurisdiction because the conduct surrounding any alleged torts took place only within Missouri. All parties agreed that none of the inventory referenced in the conversion and replevin claims was in Colorado; all corporate assets L & L sought to have returned were in Missouri.

The Colorado court denied the Gibbens' motion to dismiss on July 1, 1998, finding that it had personal jurisdiction over the Gibbens "even if the minimal contacts test is not met" due to the documents they signed, which contained a forum selection clause. The Colorado court also determined it had subject matter jurisdiction over L & L's complaint.

On August 3, 2000, the Colorado court entered an order for default judgment against the Gibbens on all claims. L & L sought to file the Colorado judgment in Greene County, Missouri in May 2001. After a hearing on the matter, the trial court sustained the Gibbens' motion to vacate registration of that foreign judgment on May 31, 2002. This appeal followed.

We address L & L's third point first, as it is dispositive. Within that point, L & L argues that the doctrine of res judicata prohibits the Gibbens from relitigating the issues of personal and subject matter jurisdiction.

■ The trial court's decision that the Colorado judgment should not be regis-

tered in Missouri as a foreign judgment is a legal conclusion, which is not binding on appeal. *Doctor's Associates, Inc. v. Duree,* 30 S.W.3d 884, 887 (Mo.App.2000). Therefore, we review the trial court's judgment *de novo. Id.*

■ Missouri is obligated to give a judgment of a sister state full faith and credit unless that judgment is void for lack of either personal jurisdiction or subject matter jurisdiction or the judgment is obtained by fraud. *Phillips v. Fallen,* 6 S.W.3d 862, 864 (Mo.banc 1999). Missouri may also refuse full faith and credit if the judgment creditor failed to give due notice to the judgment debtor. *Doctor's Associates,* 30 S.W.3d at 887.

■ With respect to a judgment rendered by a court of general jurisdiction of another state, we presume not only that the court had both personal and subject matter jurisdiction, but that the court followed its laws and entered a valid judgment in accordance with the issues in the case. *Bastian v. Tuttle,* 606 S.W.2d 808, 809 (Mo.App.1980). A party asserting the invalidity of such a judgment has the burden of overcoming the presumption of validity, unless the proceedings show that the judgment is not entitled to that presumption. *Id.*

According to the Colorado court, it obtained personal jurisdiction over the Gibbens based on the forum selection clause contained in the distributorship agreement documents. Historically, Missouri courts did not favor out-bound forum selection clauses. *State ex rel. Premier Mktg., Inc. v. Kramer,* 2 S.W.3d 118, 121 (Mo.App. 1999). The trend recently, however, has been to recognize the validity of these clauses unless they are shown to be unfair or unreasonable. *Id.*

To analyze this point, though, we need not examine the fairness and reasonable-ness of the forum selection clause. Rather, our analysis is based on the determination of the jurisdictional issues by the Colorado court and the effect of the Gibbens' motion to dismiss on their ability to raise issues of both personal and subject matter jurisdiction before the trial court in Missouri.

■ It is well established that subject matter jurisdiction may be raised at anytime during the proceedings, including for the first time on appeal. *Phillips v. Bradshaw,* 859 S.W.2d 232, 234 (Mo.App.1993). The issue is not waived by failing to raise it earlier in the process. *Stidham v. State,* 963 S.W.2d 351, 353 (Mo.App.1998).

It was not necessary for the Gibbens to raise issues of personal and subject matter jurisdiction in the Colorado court; they could have waited to raise the issues when the Colorado judgment was filed in Missouri. *Sentinel Acceptance, Ltd., L.P. v. Hodson Auto Sales & Leasing, Inc.,* 45 S.W.3d 464, 469 (Mo.App.2001) (addressing personal jurisdiction); *Phillips,* 6 S.W.3d at 864 (addressing subject matter jurisdiction).

Under that scenario, had the Gibbens not filed the motion to dismiss and "ignored" the proceedings in Colorado, the trial court in Missouri might have analyzed the reasonableness and fairness of the forum selection clause and subsequently found that the Colorado judgment was void due to lack of personal jurisdiction. The trial court also may have found that the Colorado court lacked subject matter jurisdiction, which cannot be conferred by consent or agreement of the parties, appearance, or by estoppel. *Dally v. Butler,* 972 S.W.2d 603, 608 (Mo.App.1998).

■ A judgment is void if the court that rendered the judgment lacked either personal or subject matter jurisdiction, or acted in a manner inconsistent with due

process. *Taylor v. Taylor*, 47 S.W.3d 377, 385 (Mo.App.2001). A judgment that is void due to lack of jurisdiction remains void forever, and any proceeding to cancel it is proper. *Bueneman v. Zykan*, 52 S.W.3d 49, 58 (Mo.App.2001) (judgment void due to lack of personal jurisdiction); *State ex rel. Freeway Media, L.L.C. v. City of Kansas City*, 14 S.W.3d 169, 173 (Mo.App.2000) (judgment void due to lack of subject matter jurisdiction).

▮▮▮ Missouri law states that if the issues of personal jurisdiction or subject matter jurisdiction were not litigated during the previous proceedings in the sister state, a party may raise them when the foreign judgment is filed in Missouri. *Sentinel Acceptance*, 45 S.W.3d at 469 (personal jurisdiction); *Phillips*, 6 S.W.3d at 864 (subject matter jurisdiction). In cases involving personal jurisdiction, Missouri law is also clear that when a party litigates that issue in the initial court proceedings of the sister state, that court's determination, whether right or wrong, is conclusive upon that party and entitled to full faith and credit. *Williams v. Williams*, 997 S.W.2d 80, 83 (Mo.App. 1999). Where the decision of a sister state on personal jurisdiction is adverse and no appeal is taken, the question of personal jurisdiction cannot be relitigated in the forum state. *See Id.*

These above statements of Missouri law lead to three questions: Was the issue of personal jurisdiction litigated in the Colorado court? Does the same law apply to the issue of subject matter jurisdiction? If so, was the issue of subject matter jurisdiction litigated in the Colorado court?

▮▮▮ The answers to all three questions lie in the Gibbens' motion to dismiss filed in the Colorado proceeding. According to the United States Supreme Court, the principles associated with res judicata and issue preclusion apply to questions of jurisdiction as well as to other issues. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). Therefore, a judgment rendered in a sister state is entitled to full faith and credit—even as to questions of jurisdiction—when the forum state's inquiry into jurisdiction discloses that those questions have been fully and fairly litigated and finally decided in the court that rendered the original judgment. *Id.*

▮▮▮ "After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." *Id.* at n. 10, 102 S.Ct. 1357 (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).

Here, the Gibbens filed a motion to dismiss in the Colorado court challenging both personal and subject matter jurisdiction. Under Missouri law, this used to be called a special appearance, but such is no longer required and such objections to jurisdiction may now be made by motion under Rule 55.27. *See Lovenduski v. McGrain*, 69 S.W.3d 80, 85 (Mo.App.2001).

Our analysis is aided by a case from New Mexico that addressed the doctrine of issue preclusion and the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and the effect of a defendant's special appearance. *Thoma v. Thoma*, 123 N.M. 137, 934 P.2d 1066, 1069, 1071–72 (Ct.App. 1996). In that case, an Oklahoma court entered a default judgment against a husband, granting the wife's petition for divorce, and a later judgment against the husband for child support arrears. *Id.* at

1068. In both proceedings, the husband filed a special appearance contesting Oklahoma's personal jurisdiction over him. *Id.* The New Mexico trial court refused to accord the judgments full faith and credit. *Id.*

On appeal, the *Thoma* court determined that had the husband not made a special appearance, he could raise lack of personal jurisdiction as a defense to the wife's enforcement action in New Mexico. *Id.* at 1069. The court noted that under the doctrine of issue preclusion, so long as he was provided the opportunity for full and fair litigation in the prior proceedings in Oklahoma, the husband would have been precluded from relitigating the issue of personal jurisdiction in an Oklahoma court. *Id.* Therefore, according to the New Mexico court, the Full Faith and Credit Clause precluded relitigation of that issue in New Mexico as well, because a forum state must give the final judgment of a sister state at least the same res judicata effect as the judgment would be given in the sister state. *Id.*

Thus, the husband was bound by Oklahoma's determination as to personal jurisdiction, even it was erroneous. *Id.* According to the court, the only correct avenue for husband to take after Oklahoma's determination regarding personal jurisdiction was an appeal or other direct challenge in Oklahoma. *Id.* This essentially states the law as it stands in Missouri. *See Williams,* 997 S.W.2d at 83.

In *Thoma,* in the New Mexico proceeding, the husband also asserted that Oklahoma lacked subject matter jurisdiction. *Thoma,* 934 P.2d at 1071. In its analysis of this point, the court again used the special appearance filed by the husband in the Oklahoma proceeding. *Id.* In that special appearance, the husband only contested Oklahoma's personal jurisdiction over

him and the venue. *Id.* The court stated that the issue of issue preclusion generally operated to prohibit relitigation in the forum state of subject matter jurisdiction, as well as personal jurisdiction, provided such relitigation was prohibited by the law of the sister state. *Id.* at 1072.

The *Thoma* court concluded that the Oklahoma court had made a determination on personal jurisdiction and venue, since they were specifically raised in the special appearance, but that it was unclear from the record whether the Oklahoma court had made a determination on subject matter jurisdiction, because the issue had not been raised in the special appearance. *Id.* Without such a showing, the court concluded that the husband's collateral attack on subject matter jurisdiction was appropriate, although the court determined that the husband failed in his burden in the collateral attack to show that the Oklahoma court did not have subject matter jurisdiction. *Id.*

 In terms of both personal jurisdiction and subject matter jurisdiction, *Thoma* states that relitigation is prohibited in the forum state if the law of the sister state prohibits it. *Id.* at 1069, 1072. The law of the sister state in the case at bar, Colorado, is as follows, "A party that has had an opportunity to litigate the question of subject matter jurisdiction may not … reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *O'Neill v. Simpson,* 958 P.2d 1121, 1123 (Colo.1998). As indicated previously, Missouri law as well states that the issues of personal and subject matter jurisdiction may only be litigated in Missouri if they have not been previously litigated in the prior proceeding in the sister state. *Sentinel Acceptance,* 45 S.W.3d at 469 (personal

jurisdiction); *Phillips*, 6 S.W.3d at 864 (subject matter jurisdiction).

Here, rather than ignore the Colorado proceedings, as was their prerogative to do, the Gibbens raised the issues of personal jurisdiction and subject matter jurisdiction in their motion to dismiss. *See Phillips*, 6 S.W.3d at 864. Using the analysis presented in *Thoma*, along with Missouri case law, since both of the issues were specifically raised in that motion, the Colorado court must have determined that it had both personal jurisdiction and subject matter jurisdiction. *Thoma*, 934 P.2d at 1071. Similar to *Thoma*, the Gibbens were provided with the opportunity to fully and fairly litigate those issues in the Colorado court. They also chose not to follow the avenue of a direct appeal in Colorado, which was among their options once an adverse judgment was entered against them. *See Williams*, 997 S.W.2d at 83.

The end result is that, under the circumstances of this case and the actions taken by the Gibbens, the Colorado court's determinations on both personal jurisdiction and subject matter jurisdiction must be accepted, regardless of whether they are erroneous. The Colorado judgment is entitled to full faith and credit in Missouri. Therefore, Point III has merit and as it is dispositive, we will not address the remaining points.

The judgment is reversed and the cause remanded with directions for the trial court to enter a judgment registering the Colorado judgment in Missouri.

PARRISH and SHRUM, JJ., concur.