[No. 53328-2-I. Division One. March 21, 2005.]

*In the Matter of the Marriage of* KIMBRA L. OWEN, *Respondent*, and DANIEL D. PHILLIPS, *Appellant*.

488

*Daniel D. Phillips*, pro se.
*Douglas P. Becker*, for respondent.

¶1 AGID, J. — Daniel D. Phillips moved to quash a child support contempt order and to dismiss for lack of jurisdiction or forum non conveniens in his former wife Kimbra Owen's action to collect delinquent child support. After the trial court denied his motions, it refused to allow him to file an answer. Phillips appeals, arguing that the trial court lacked subject matter and personal jurisdiction to enforce the child support order. He argues in the alternative that forum non conveniens was a proper basis for dismissal. The trial court rejected his arguments, holding that the Missouri Supreme Court had already decided the jurisdictional issues, and its decision was entitled to full faith and credit. On appeal, Owen no longer argues that full faith and credit applies, so we reach only the jurisdictional issues. We hold that the support order was properly registered in Washington and gave the trial court subject matter jurisdiction to enforce it. Because Phillips contested only the court's personal jurisdiction over him when opposing *modification* of the support order in 1995, he has waived his right to contest personal jurisdiction for registration and enforcement of the order. We affirm the superior court's order, but remand so that the court can allow Phillips to answer the enforcement motion.

## FACTS

¶2 In July 1983, Phillips married Kimbra L. Owen (nka Martin) in Oregon. The couple's only child was born in August 1983. The family moved to Missouri in 1987 and then to Kansas in 1988, where Phillips and Owen divorced in June 1989. They resolved all rights and claims in a divorce and custody decree entered by the Johnson County

(Kansas) District Court on June 30, 1989. This decree included a child support order that was later modified by the same court in 1993.

¶3 Phillips moved to Missouri in August 1989 and remained there until 1997, when he moved back to Kansas where he still lives. Owen and the child moved to Washington in 1992 after living briefly in New Jersey. Since 1993 this case has involved a complex, multistate history of litigation about child support orders.

¶4 In 1993, Owen petitioned in the King County Superior Court for modification of the custody decree and approval of her proposed parenting plan. Phillips consented to entry of the plan, and it was filed in February 1994. In 1995, Owen submitted a request in King County Superior Court to register and enforce the Kansas support order. She also filed a petition for support modification at the same time, asserting that personal jurisdiction derived from the fact that the child may have been conceived in Washington. Phillips entered a special appearance and moved to dismiss Owen's motion to *modify* support, arguing that the court lacked personal jurisdiction over him because the child could not have been conceived in Washington. He did not contest personal jurisdiction for purposes of *enforcing* the order.[1] The superior court entered a default judgment against him for unpaid child support and granted Owen's petition for modification. Phillips did not appeal.

¶5 Later in 1995, Owen sought to enforce the modified Washington order in Missouri where Phillips was living at the time. The Missouri Division of Child Support Enforcement entered an administrative order against Phillips, which he appealed all the way to the Missouri Supreme Court. In 1999, the Missouri Supreme Court overturned the order, holding that Washington had no authority to modify the Kansas order under requirements of the Uniform Interstate Family Support Act (UIFSA), chapter 26.21 RCW. In 2001, Owen unsuccessfully petitioned a Kansas court to enforce the modified 1995 Washington order in Kansas.

---

[1] *See* RCW 26.21.075(6).

¶6 In February 2003, Owen filed a motion for contempt in King County Superior Court because Phillips failed to make child support payments as required by the modified 1995 *Washington* order. Phillips filed a special appearance and motion to dismiss based on lack of subject matter and personal jurisdiction. A court commissioner found the court lacked personal jurisdiction to enter a contempt order.

¶7 Owen then filed a motion for contempt based on Phillips' failure to make child support payments as required by the Kansas order. Phillips again moved to dismiss. This time he asserted lack of subject matter and personal jurisdiction, and forum non conveniens. A court commissioner denied the motion to dismiss and found Phillips in contempt, entering judgment for back child support payments, interest, medical expenses, and attorney fees. Phillips moved for revision and filed a motion for a stay of the Washington judgment pending a Kansas court's determination of arrearages. In the alternative, Phillips asked to file substantive answers to Owen's allegations. In October 2003, the superior court denied Phillips' motions and affirmed the commissioner's ruling. Phillips appeals.

## DISCUSSION

¶8 Owen now acknowledges that Washington courts do not have jurisdiction to *modify* the Kansas order. So the main issue on appeal is whether Washington courts have jurisdiction to *enforce* the Kansas support order.

### I. *Subject Matter Jurisdiction*

¶9 Phillips argues that Washington courts do not have subject matter jurisdiction because Kansas retains continuing, exclusive jurisdiction over enforcement of the child support order. Whether a court has subject matter jurisdiction is a question of law we review de novo.[2]

---

[2] *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465, 975 P.2d 555 (citing *Bour v. Johnson*, 80 Wn. App. 643, 647, 910 P.2d 548 (1996)), *review denied*, 138 Wn.2d 1024 (1999).

Because Washington superior courts have general jurisdiction, they lack subject matter jurisdiction only " 'under compelling circumstances, such as when it is explicitly limited by the Legislature or Congress.' "[3] UIFSA has been adopted by all states and controls the subject matter jurisdiction issue in this case.[4]

¶10 Phillips argues that Kansas retains continuing, exclusive jurisdiction for enforcement purposes because (1) the Kansas support order was never validly modified, and (2) Owen never properly registered the order in Washington. He contends that the Full Faith and Credit for Child Support Orders Act of 1994 (FFCCSA) dictates that Kansas' continuing, exclusive jurisdiction remains in effect until another state's court validly modifies a support order. But as Owen correctly points out, although the FFCCSA restricts *modification* of out-of-state child support orders, it also requires *enforcement* of those orders.[5]

¶11 Phillips contends that the support order was not properly registered in Washington in 1995 and that strict compliance with the terms of the registration statute is necessary to confer subject matter jurisdiction on the superior court. He asserts that Owen's registration request and supporting documentation were not filed properly under RCW 26.21.490 and that the registration notice he received failed to specify the amount of arrearages as required by RCW 26.21.520(2)(d). He acknowledges that the superior court has jurisdiction to enforce the Kansas support order if the order is validly registered as a foreign support order

---

[3] *In re Marriage of Thurston*, 92 Wn. App. 494, 498, 963 P.2d 947 (1998) (quoting *In re Marriage of Major*, 71 Wn. App. 531, 534, 859 P.2d 1262 (1993)), *review denied*, 137 Wn.2d 1023 (1999).

[4] RCW 26.21.005 to 26.21.916; KAN. STAT. ANN. § 23-9,301 to § 23-9,903. "The Uniform Interstate Family Support Act (UIFSA), which has been adopted by all states, governs the procedure for establishing, enforcing, and modifying child and spousal support orders and for determining parentage when more than one state is involved in these proceedings." Kurtis A. Kemper, Annotation, *Construction and Application of Uniform Interstate Family Support Act*, 90 A.L.R.5th 1 (2001). The Full Faith and Credit for Child Support Orders Act (FFCCSA) also applies to enforce interstate child support orders. 28 U.S.C. § 1738B.

[5] 28 U.S.C. § 1738B(a).

under UIFSA.[6] Owen argues that the superior court has subject matter jurisdiction because King County Superior Court was a proper place to file the documents, and Phillips waived his right to object to registration when he failed to contest the validity or enforcement of the order in a timely manner. We need not determine whether Phillips waived his right to claim lack of subject matter jurisdiction because we hold that Owen substantially complied with the registration requirements of UIFSA.

¶12 As we noted above, a support order issued by another state's tribunal may be registered in Washington for enforcement.[7] The order may be registered by sending the required documents and information "to the support enforcement agency of this state or to the superior court of any county in this state where the obligor resides, works, or has property . . . ."[8] Washington tribunals "shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction."[9] The parties agree that Owen sent the registration request and supporting documents to King County Superior Court. They also agree that Phillips has never resided, worked, or owned property in King County or anywhere else in Washington. Owen asserts that the superior court is a "support enforcement agency" for purposes of RCW 26.21.490. But the superior court clearly is not the support enforcement agency for the state, as it is neither a public official nor an agency. The order should have been registered with Washington's support enforcement agency, the Department of Social and Health

---

[6] *See* RCW 26.21.480 (authorizing registration of out-of-state support orders for enforcement in Washington).

[7] *Id.*

[8] RCW 26.21.490(1).

[9] RCW 26.21.500(3). Washington courts may not modify an out-of-state order unless all parties "have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order." RCW 26.21.580(1)(b).

Services (DSHS).[10] Despite this error, the superior court accepted the registration request, filed the Kansas order, and notified Phillips.

¶13 Phillips relies on *In re Marriage of Scanlon*[11] to argue that "strict compliance" with registration procedures is necessary to establish subject matter jurisdiction. But there we held that Georgia courts retained continuing, exclusive jurisdiction because there was no proof that the Georgia support order had ever been registered in Washington.[12] We did not hold that "strict compliance" was required. Nor did we address whether an out-of-state order that was registered despite procedural flaws substantially complies with the statute. Phillips does not cite, and we cannot find, any Washington precedent addressing that issue. We have found cases from other states confronting the question with varying results.[13] But these cases concerned registrations that lacked documentation and information, not attempts to register with the wrong authority. Here, the registration included all required documentation and information, but it was sent to the wrong place. For the reasons discussed below, we hold that substantial compliance with procedural registration requirements satisfies the statute governing filing an out-of-state support order, so

---

[10] *See* RCW 26.21.015 (the DSHS office of support enforcement is the state agency for administrative proceedings).

[11] 110 Wn. App. 682, 42 P.3d 447, *review denied*, 147 Wn.2d 1024 (2002).

[12] *Scanlon*, 110 Wn. App. at 688. We stated that "Georgia retains continuing, exclusive jurisdiction over child support issues unless the Georgia child support order was registered in Washington under RCW 26.21.490." *Id.* at 687. We addressed a similar situation in *In re Marriage of Erickson*, holding that Washington courts lacked subject matter jurisdiction where a California-issued support order was never registered in Washington. 98 Wn. App. 892, 896, 991 P.2d 123 (2000).

[13] *Compare Twaddell v. Anderson*, 136 N.C. App. 56, 523 S.E.2d 710 (1999) (substantial compliance with registration requirements was sufficient to allow registration of a California support order in North Carolina), *review denied*, 351 N.C. 480, 543 S.E.2d 510 (2000), *and Nelson v. Halley*, 827 So. 2d 42 (Miss. Ct. App. 2002) (registration was valid despite absence of social security numbers and employer information), *with In re Interest of Chapman*, 973 S.W.2d 346 (Tex. Ct. App. 1998) (procedural requirements in UIFSA are mandatory and failure to provide required documentation prevented registration).

long as the obligor is not prejudiced by the manner in which it is filed.

¶14 The validity of the order to be registered, not the power of the registering court to proceed, is the paramount concern of the statute governing registration of out-of-state orders. "There is no defense . . . to registration of a valid foreign support order."[14] Phillips concedes as much[15] but still asserts Owen's failure to properly register deprives the court of subject matter jurisdiction. Owen's registration and enforcement request clearly indicates that Phillips did not reside, work, or own property in Washington. It should therefore have been filed with DSHS. The superior court could have sent the registration request and documentation back to Owen so she could refile it with DSHS or forwarded the request directly to the agency. The court instead filed the order and notified Phillips. Phillips does not dispute that the Kansas order is valid, and he does not argue that Owen's registration error worked an injustice.[16] Despite the error, Phillips received notice of registration and had ample opportunity to answer. Because he suffered no prejudice from the error, and recognizing the registration furthers the statutory policy, we hold that the registration was valid.[17]

¶15 Public policy supports our determination that substantial compliance is the appropriate standard where there is no prejudice to the obligor. UIFSA encourages parties to register valid child support orders, and the procedural safeguards are designed to minimize the risk of prejudice to the obligor. UIFSA does not support a policy

---

[14] Uniform Interstate Family Support Act, § 606 cmt., 9 U.L.A. 363 (1999).

[15] Phillips correctly asserts that the only defenses to registration involve the validity of the original order.

[16] If anything, Owen's error harmed only Owen herself because there would be no basis for disputing the registration had she filed the order with DSHS in the first place.

[17] Had Owen registered the order without a sworn or certified statement of the amount of arrearages, the nonregistering party would be prejudiced because he could not determine whether the order was valid and/or how much he/she owed.

that punishes support recipients for minor, harmless procedural errors in registration. Phillips does not dispute the validity of the Kansas order or that he owes back support. Holding that the registration was invalid under these circumstances would undercut UIFSA's purpose.

¶16 Phillips also asserts that the notice of registration did not specify the amount of arrearages. The registering authority must notify the nonregistering party, and the notice must include "the amount of any alleged arrearages."[18] Phillips acknowledges that the amount of arrearages was included in the registered order that was attached to the notice.[19] But he is apparently arguing that the entire registration is invalid because the initial notice page, instead of explicitly stating an amount of arrearages, states that "[t]he amount of support arrearage is set forth in the registered order."[20] We reject this argument. The purpose of the notification requirement is to assure that "the nonregistering party be fully informed of the effect of registration."[21] The attached order did just that. Phillips was fully informed and needed only to look at the attached order to determine the amount of arrearages Owen claimed.

¶17 The superior court had subject matter jurisdiction to enforce the Kansas support order.

## II. *Personal Jurisdiction*

¶18 Owen contends that because Phillips failed to properly contest registration and enforcement of the Kansas order in 1995, he cannot now argue lack of personal jurisdiction. Phillips argues that he adequately contested registration and enforcement by bringing his motion to

---

[18] RCW 26.21.520(2)(d).

[19] Owen noted in her sworn statement that her payment record was correct and that the Trustee's statement "reflects a larger past-due balance than actually exists."

[20] The registered order includes a detailed statement of arrearages.

[21] Uniform Interstate Family Support Act, § 605 cmt., 9 U.L.A. 359 (1999).

dismiss for lack of jurisdiction when Owen sought to enforce the order in 2003. Neither party is precisely correct.

■ ¶19 A nonregistering, out-of-state party has 60 days after receipt of the registration notice to request a hearing to contest the validity *or* enforcement of a registered order.[22] The statute provides: "If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law."[23] Once the order is confirmed, "whether by operation of law or after notice and hearing, [confirmation] precludes further contest of the order with respect to any matter that could have been asserted at the time of registration."[24] Owen contends Phillips' failure to contest the order within 60 days of the registration notice constitutes waiver of the defense of lack of personal jurisdiction. We disagree.

¶20 The defenses the statute requires an obligor to raise go to the validity of the underlying order, and include lack of personal jurisdiction of the *issuing tribunal*. RCW 26.21.540. The personal jurisdiction of the *responding* tribunal is not included, and we do not read the broad language of RCW 26.21.520(2) as encompassing defenses other than those set forth in RCW 26.21.540.[25] Simple uncontested registration does not confer personal jurisdiction on the enforcing tribunal. If the rule were otherwise, simultaneous registration in multiple states would pose an insurmountable problem, because the debtor would be forced to litigate not only defenses to the order itself but defenses to each tribunal's jurisdiction in multiple locations

---

[22] RCW 26.21.530(1).

[23] RCW 26.21.530(2).

[24] RCW 26.21.550.

[25] "Failure to contest the validity or enforcement of the registered order will . . . preclude[ ] further contest of that order with respect to any matter that could have been asserted."

around the country. We are confident that is not the intent of UIFSA.[26]

¶21 But Phillips' defense fails anyway because the court acquired personal jurisdiction over him in this matter in 1995. Although that proceeding also resulted in an erroneous modification order, Owen sought to and the court did enforce the Kansas order. Phillips did not object to personal jurisdiction for that purpose. Moreover, the court ruled it had personal jurisdiction, and Phillips did not appeal.[27]

¶22 We hold the court has personal jurisdiction over Phillips for purposes of enforcing the Kansas support order.

III. *Trial Court's Determination of Arrearages and Interest*

¶23 Phillips argues that UIFSA limits the trial court to requiring payment of the arrearages amount stated in the registered order. Thus, he asserts the trial court improperly determined arrearages and interest on its own. He contends the Washington courts can serve only as initiating tribunals[28] because Washington does not have continuing, exclusive jurisdiction.

---

[26] In comments to UIFSA, Professor Sampson observes that the statute "place[s] the burden . . . on the nonregistering party" to assert narrowly defined defenses to registration of a support order, and notes further that where the nonregistering party has no nexus with the registering state, he or she is "free to ignore the registration" and "retains his right to collaterally attack the registration on the basis of the constitutional violation of due process, i.e., that he was not subject to the personal jurisdiction of the court." *Uniform Interstate Family Support Act (With Unofficial Annotations by John. J. Sampson)*, 27 FAM. L. Q. 93, 157 n.141 (Spring 1993).

[27] Phillips later challenged the Washington modification in Missouri. Missouri's Supreme Court held that the Washington court had personal jurisdiction over Phillips due to the possibility that conception occurred in Washington. But the Missouri court ruled the Washington court lacked subject matter jurisdiction to *modify* the Kansas order. *Phillips v. Fallen*, 6 S.W.3d 862, 865-66 (Mo. 1999).

[28] "A tribunal of this state may serve as an initiating tribunal to request a tribunal of another state to enforce or modify a support order issued in that state." RCW 26.21.127(1).

¶24 A "responding state" is a state in which a proceeding is filed.[29] RCW 26.21.127(2) provides that "[a] tribunal of this state having continuing, exclusive jurisdiction over a support order may act as a responding tribunal to enforce or modify the order." A responding tribunal may, among other things, issue, enforce, or modify a support order and determine the amount of arrearages and payment method.[30] "A registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state."[31] Although Washington tribunals cannot modify a registered order if the issuing tribunal had jurisdiction, they must recognize and enforce that order.[32] "The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order."[33] Because the Kansas order was registered in Washington, our courts must enforce it and can do so as if the order were issued in Washington.

¶25 But Phillips argues that because Kansas retained continuing, exclusive jurisdiction, Washington as a registering tribunal does not have the powers of a responding tribunal. He also asserts that "[t]he role of a [r]esponding [t]ribunal is significantly omitted from the effect of registration under UIFSA." Owen does not dispute that Kansas retains continuing, exclusive jurisdiction to modify the order but correctly points out that the plain language of UIFSA requires tribunals in registering states to enforce support orders, regardless of whether they are responding tribunals under the statute. Here, although UIFSA limits

---

[29] RCW 26.21.005(16). It is also a state "to which a proceeding is forwarded for filing from an initiating state . . . ." *Id.*

[30] RCW 26.21.245(2)(a), (d).

[31] RCW 26.21.500(2).

[32] RCW 26.21.500(3).

[33] RCW 26.21.510(1).

the superior court's issuing and modification powers,[34] it specifically grants that court broad enforcement powers because the order was registered in Washington. A registering state does not need continuing, exclusive jurisdiction to enforce a support order.

¶26 Were we to adopt Phillips' arguments, we would effectively prohibit Washington tribunals from enforcing any of the terms of a registered support order except the initial arrearage amount. We could not enforce monthly payment terms or pursue delinquent support amounts accruing after the order is registered. The plain language of UIFSA, quoted above, gives the registering state enforcement powers as if it were an issuing state. We must interpret and construe the statute to give all of its language effect so that no portion is rendered meaningless or pointless.[35] UIFSA's enforcement provisions facilitate the enforcement of child support orders among the states. Once a support order is registered in Washington, our courts may enforce all of its terms, not just the initial arrearage amount.[36] This is the only interpretation of the statute that conforms to UIFSA and FFCCSA's mandate that the appropriate Washington authority "shall enforce *according to its terms* a child support order made consistently with this section by a court of another State . . . ."[37]

¶27 The trial court calculated the arrearages based on the monthly payments set by the Kansas order and used Kansas's statutory rates to calculate interest. This complies

---

[34] *See* RCW 26.21.420(1) (limiting the instances when a responding tribunal may issue a support order); RCW 26.21.500(3) (prohibiting modification if the issuing tribunal had jurisdiction).

[35] *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (citing *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988); *Tommy P. v. Bd. of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982)).

[36] UIFSA does not limit registration and enforcement to situations in which there are arrearages. The information required to register the order includes a sworn statement "showing the amount of *any* arrearage." RCW 26.21.490(1)(c) (emphasis added).

[37] 28 U.S.C. § 1738B(a)(1) (emphasis added).

with UIFSA's choice of law provisions.[38] The court then issued a judgment against Phillips for back support and interest. Because a Washington court could establish arrearages and interest if the order were issued in Washington, the trial court's order falls within the scope of UIFSA's enforcement powers. The trial court did not exceed its jurisdiction.

IV. *Right to File a Substantive Answer*

¶28 Phillips argues that he was entitled to file an answer after the trial court denied his motion to dismiss. Owen argues that Phillips waived his right to substantively respond because he did not do so when he filed his motion to dismiss. CR 12(b) provides that jurisdictional defenses may be asserted in a responsive pleading or by motion. Service of a motion to dismiss for lack of jurisdiction "alters the time for answering until 10 days after notice that the court has 'den[ied] the motion or postpone[d] its disposition until the trial on the merits.' "[39] Although Phillips did not answer in the time required under CR 12(a) because he filed a motion to dismiss, he was not required to do so until after his motion was denied or postponed.[40] While Phillips could have included his answer in his motion to dismiss, he was not required to do so. On remand, the trial court shall allow Phillips 10 days to file a responsive pleading and conduct any further proceedings it deems necessary.

V. *Forum non Conveniens*

¶29 Phillips relies on forum non conveniens to argue that the court should defer to the Kansas courts in establishing and enforcing any arrearage. Under that doctrine, a court may defer jurisdiction to a more convenient forum when the court finds that " 'the difficulties of litiga-

---

[38] The law of the issuing state governs all "other obligations of support and the payment of arrearages under the order." RCW 26.21.510(1).

[39] *Campbell v. Scannell*, 32 Wn. App. 346, 348, 647 P.2d 529 (1982) (alterations in original) (quoting CR 12(a)(4)(A)).

[40] *Id.*

tion militate for the dismissal of the action . . . .' "[41] We review a forum non conveniens decision for abuse of discretion.[42] The trial court abuses its discretion when its decision is " 'manifestly unfair, unreasonable, or untenable.' "[43]

 ¶30 The doctrine does not apply in this case. UIFSA is designed to facilitate registration and enforcement of decrees in non-issuing states. As such, it inherently contemplates that the forum may not be convenient for all parties. The trial court did not abuse its discretion in denying Phillips' motion to dismiss on this basis.

VI. *Attorney Fees*

¶31 Owen asks us to award attorney fees. But because we remand to the trial court for further proceedings, we leave it to that court to determine the amount of attorney fees to be awarded, if any.[44]

¶32 We affirm the trial court's assertion of subject matter and personal jurisdiction and its power to determine arrearages and interest based on Kansas law. We remand to allow Phillips to file a substantive answer to the petitions and for any further proceedings the trial court deems necessary.

ELLINGTON, A.C.J., and APPELWICK, J., concur.

Reconsideration denied May 10, 2005.

Review denied at 155 Wn.2d 1022 (2005).

---

[41] *Myers v. Boeing Co.*, 115 Wn.2d 123, 128, 794 P.2d 1272 (1990) (quoting *Werner v. Werner*, 84 Wn.2d 360, 370, 526 P.2d 370 (1974)).

[42] *Id.* The trial court did not specifically discuss Phillips' forum non conveniens argument, but it must have concluded that the doctrine did not apply here because it denied the motion to dismiss.

[43] *Id.* (quoting *Gen. Tel. Co. v. Utils. & Transp. Comm'n*, 104 Wn.2d 460, 474, 706 P.2d 625 (1985)).

[44] We "may direct that the amount of fees and expenses be determined by the trial court after remand." RAP 18.1(i).