[No. C. D. 953. *En Banc.* January 9, 1943.]

*In the Matter of the Proceedings for the Disbarment of* THURSTON C. BASHOR.[1]

*S. H. Kelleran,* for board of governors.

*Eugene F. Hooper,* for respondent.

SIMPSON, J.—This is a proceeding for the disbarment of Thurston C. Bashor, an attorney authorized to practice law before the courts of this state. The record of

[1]Reported in 132 P. (2d) 1027.

the hearings before the trial committee and the board of governors of the state bar association, together with the findings of fact and recommendations, have been transmitted to this court.

■ Respondent has presented a motion to stay these proceedings, on the ground that he is now a member of the United States army and that, under the provisions of the soldiers' and sailors' relief act of 1940, he is entitled to have this hearing continued until he is discharged from service.

The pertinent portions of the act provide:

50 U. S. C. A. (Sup.), § 521. "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

50 U. S. C. A. (Sup.), § 523. "In any action or proceeding commenced in any court against a person in military service, before or during the period of such service, or within sixty days thereafter, the court may, in its discretion, on its own motion, or on application to it by such person or some person on his behalf shall, unless in the opinion of the court the ability of the defendant to comply with the judgment or order entered or sought is not materially affected by reason of his military service—

"(a) Stay the execution of any judgment or order entered against such person, as provided in this Act; and

"(b) Vacate or stay any attachment or garnishment of property, money, or debts in the hands of another, whether before or after judgment as provided in this Act."

Is the ability of respondent to conduct his defense materially affected by reason of his military service? Congress, in passing the act, intended to extend protection to persons in the military service, in order to prevent injury to their civil rights during their terms of service and to enable them to devote their entire energy to the military needs of the nation.

The act should be liberally construed in favor of the individual engaged in military service. However, the fact that an individual involved in litigation is in the military service is not a defense to an action. The act does mean that soldiers and sailors in the service who are handicapped by reason of their military service, either in making valid defenses to an action or in meeting their financial obligations, shall have the protection of the courts to prevent prejudice to their rights by reason of the service.

As we read the quoted sections, we are of the opinion that the framers of the act intended to lodge in the court a sound discretion, upon a motion to stay proceedings being filed by a party litigant, to be exercised according to the facts as they may appear in each case. The present case may be looked upon as presenting a situation illustrative of the rule just announced.

Here, we have a case in which all of the facts were presented to the trial committee in the presence of respondent and prior to the time he was inducted into the military service. All questions, except those to be decided by this court in reviewing the acts of the trial committee and the board of governors, had been fully completed prior to the time respondent joined the army. In fact, the application for stay was not filed until after the case had been filed here.

In this court, respondent submitted his brief on the merits and was represented by competent counsel. It is clearly apparent that respondent's defense has not

been materially, or in any way, affected by reason of his military service. The motion to stay is denied.

Two principal charges are made against respondent, Bashor. In the first, the record discloses the following facts: Respondent practiced law in the city of Kelso. In a case filed in that county, respondent was attorney for the plaintiff and secured a writ of garnishment against the Grays Harbor branch of the National Bank of Commerce, a corporation, of Aberdeen, Washington, as garnishee defendant. Respondent prepared all of the documents necessary to secure the writ of garnishment. Respondent then took the writ of garnishment to Aberdeen and, ascertaining that there were no funds payable to the defendant in the National Bank of Commerce, placed in the writ of garnishment the name of the Bank of Aberdeen, believing that he might find some funds belonging to defendant in that bank. The writ was then served upon the Bank of Aberdeen, though no affidavit had been filed showing that the Bank of Aberdeen was indebted to the defendant in the main action.

In the second charge, the record discloses the following facts: That, during the month of November, 1939, Mrs. Verna DeCoite started an action against her husband, Michael DeCoite, and, after trial, secured an interlocutory decree of divorce, in which she was awarded the community interest in a tract of land situated in the city of Kelso. The interest in the tract of land was that secured under a contract of purchase, wherein Cowlitz county was the seller of the property and the DeCoites were the purchasers, the contract being designated by the county as contract No. 689. After the entry of the interlocutory decree, the parties were reconciled and lived together for a short time. However, in June, 1940, Mrs. DeCoite commenced a second action for divorce, and secured an interlocutory decree on or about August 26, 1940, in which there

was again set over to her all interest in the real estate contract. The final decree was granted in February, 1941.

July 5, 1940, Robert Taber, represented by respondent, commenced an action in the superior court against Michael DeCoite and wife upon a promissory note in the principal sum of $350, dated September 3, 1939, payable to the order of Taber in installments, the first of which became due October 2, 1939. That action resulted in a judgment by default made and entered prior to the entry of the interlocutory decree of August 26, 1940. Shortly after August 26, 1940, Mrs. DeCoite, through her attorney, filed a declaration of homestead on the real property and its contract rights. Shortly before that time, respondent had demanded of Mrs. DeCoite's attorney that the judgment be satisfied and threatened an execution if payment was not made. At that time, respondent was informed by the attorney for Mrs. DeCoite that she had filed a declaration of homestead.

On or about November 19, 1940, Robert Taber, through respondent, his attorney, commenced another action against DeCoite and wife which was labeled an ejectment action. Attached to the complaint in that action was a copy of an assignment of the real estate contract between the DeCoites and Cowlitz county. The assignment of the real estate contract was executed in duplicate and was signed by Michael DeCoite and Robert Taber. A photostatic copy, or one of the originals of the assignment, was filed of record with the auditor of Cowlitz county, under date of October 4, 1940. The duplicate original was filed with the county treasurer of Cowlitz county and attached to the county's copy of the contract.

October 4, 1940, Robert Taber made payment of the installment about to become due as of November 1, 1940. The body of the originals of the assignments of

real estate contract was made with a typewriter using a comparatively large and heavy type. In the first line, there was apparently a blank originally and that was filled in, by a typewriter with a smaller and finer type, with the following words: "August first, 1939"; and in the body of the acknowledgment there was a blank for a date. The body of the instrument was typewritten with a heavy type typewriter and the date filled in was in the lighter type. On the original filed with the county auditor, the date filled in the body of the acknowledgment was September 30, 1939, and on the duplicate original file of the county treasurer, September 30, 1940. The concluding sentence of the acknowledgment "Given under my hand and official seal ————" was filled in, in the blank space on both originals, with the lighter typewriter with the date of September 30, 1939. October, 1939, Michael DeCoite paid the installment due under the contract as of November 1, 1939.

Respondent testified at the hearing that the assignment of the real estate contract was intended as security for the note of September 3, 1939, though the assignment of the real estate contract was dated "August first, 1939." The assignment shows that respondent took the acknowledgment of Mr. DeCoite and dated it September 30, 1939.

The record shows, however, that, in the latter part of September, 1939, respondent asked Mr. Talcott of Olympia to make his seal as a notary; that the seal when made showed the expiration date as September 28, 1943, and that Mr. Talcott made the seal on the 30th day of September, 1939, at Olympia, and mailed it by parcel post to Mr. Bashor at Kelso, where it was received by him October 2, 1939, the intervening day, October 1st, being Sunday. It was further shown that respondent took his bond to the county clerk of Cowlitz county for approval on the 30th day of September,

1939, paid his fee therefor, and on that day mailed the bond with the clerk's approval to the governor at Olympia, and his commission as notary was issued by the governor October 2, 1939.

The trial committee found that the assignment of the real estate contract was made in 1940 instead of 1939. The board of governors found respondent guilty of unprofessional conduct and have recommended that he be disbarred from the practice of law.

It is apparent from the undisputed facts that respondent deliberately falsified the writ of garnishment issued out of the superior court of Cowlitz county. A reading of the record, relative to the attempt to obtain the property belonging to Mrs. DeCoite, convinces us, as it did the trial committee, that the instrument signed by Michael DeCoite was actually made in 1940, instead of 1939, and that respondent dated his acknowledgment back one year so that the assignment might show as of the date prior to the time the last interlocutory divorce decree was entered.

Respondent's defense, as stated in his brief and indicated in his testimony, is that his actions were irregular and "slightly illegal" but that "it was a mistake of the hand and not of the heart." This defense does not appeal to us, for the reason that the acts of respondent in each instance showed a studied intent to deceive and are not in keeping with the honesty of purpose and standard of ethics maintained by the bar of this state. The actions of respondent evidence a total lack of professional honesty which renders him unworthy of performing his duties as an attorney at law.

It is ordered that respondent's name be stricken from the roll of attorneys, and that he be, and is, disbarred from practicing law in this state.

ROBINSON, C. J., BEALS, MILLARD, STEINERT, BLAKE, JEFFERS, and MALLERY, JJ., concur.