[No. 18693-4-II.   Division Two.   July 12, 1996.]

*In the Matter of the Marriage of* DAVID A. PECK, *Appellant,* and CATHY JOANNE PECK, *Respondent.*

*Robert L. Hayes*, for appellant.

*Antoni H. Froehling* and *Mayhew-Froehling*, for respondent.

ARMSTRONG, J. — David A. Peck appeals the decree dissolving his marriage to Cathy J. Peck, contending that the trial court lacked personal jurisdiction to adjudicate his child support obligation and divide the parties' property, including his military pension. He also contends that the trial court should have stayed the dissolution proceedings under the Federal Soldiers' and Sailors' Civil Relief Act because he was on active sea duty. We reverse for lack of jurisdiction.

The parties were married in Virginia in 1986. They separated in 1991, when Cathy moved from Maine to Washington with their two minor children. David has been on active duty with the United States Navy since before the parties were married. The parties never lived together in Washington, and David has never been in Washington except to visit Cathy's family during the marriage.

Cathy petitioned for divorce in 1992 in Pierce County. David moved to dismiss for lack of personal jurisdiction over him, and for an award of attorney's fees. A superior court commissioner denied the motion, and David moved unsuccessfully to revise.

Trial was originally set for January 28, 1994. On Janu-

ary 20, 1994, David's lawyer moved for a stay of proceedings pursuant to the Soldiers' and Sailors' Civil Relief Act. The trial court granted a continuance.

On the rescheduled trial date of May 13, 1994, the court asked David's lawyer if it was his "preference to have the matter set over either because your client is not here or because there was not a settlement conference or both?" Counsel responded that he was not requesting another continuance because the court would probably deny it. He and Cathy's lawyer then had a brief but unproductive settlement discussion, and trial began. David was on naval duty overseas, and Cathy was the only witness.

At the end of Cathy's case, David's lawyer requested a continuance for two months so his client could come to Washington and testify. The court denied the motion. After trial, the court entered a decree dissolving the marriage, fixing the amount of child support payable by David, adopting a parenting plan, and dividing the marital property, including David's Navy pension.

David has continuously objected to Washington's assertion of personal jurisdiction over him. He concedes that the Washington court has jurisdiction to dissolve the marriage based on Cathy's Pierce County residency, RCW 26.09.010(2), .030, and jurisdiction to adjudicate the children's custody under the Uniform Child Custody Jurisdiction Act, RCW 26.27.030, but he argues that Washington lacks the personal jurisdiction over him necessary to order child support or divide the parties' marital property, including his Navy pension.

I

■ Preliminarily, we consider whether the trial court should have stayed proceedings pursuant to the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. app. § 521 (1940), which provides:

> § 521. Stay of proceedings where military service affects conduct thereof.

At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act . . . unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.

This statute vests the trial court with discretion to decide whether to stay proceedings so a person in military service can attend court and raise a valid defense. *Smith v. Fitch*, 25 Wn.2d 619, 629, 171 P.2d 682 (1946) (citing *In re Bashor*, 16 Wn.2d 168, 170, 132 P.2d 1027 (1943)). The Act plainly provides, however, that the court can proceed if presentation of the sailor's case is "not materially affected by reason of his military service." David was able to raise his primary defense of lack of jurisdiction through his attorney, without appearing personally. He does not show what his testimony would have been had he been present, or that it would probably have changed the result. Absent such a showing of prejudice, he is not entitled to relief on this issue. *See Fitch*, 25 Wn.2d at 629-30; *Jaramillo v. Sandoval*, 78 N.M. 332, 431 P.2d 65 (1967); *Power v. Power*, 720 S.W.2d 683 (Tex. Ct. App. 1986).

## II

We turn next to the trial court's alleged lack of in personam jurisdiction over David to divide his military pension. The court's authority to divide the pension comes from the Uniformed Services Former Spouses' Protection Act (USFSPA), which provides in 10 U.S.C. § 1408(c)(4) (1982) that the court has jurisdiction over the disposable retired or retainer pay of a service member by reason of: "(A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his

consent to the jurisdiction of the court." David is not a resident or domiciliary of the state of Washington. The issue, then, is whether he submitted to the court's jurisdiction by consent.

Cathy argues that David manifested consent in his answer to her petition by asking the court for affirmative relief, i.e., to establish child support pursuant to the Washington State Child Support Schedule. The trial court accepted this argument in denying David's motion for reconsideration, reasoning that David had seemed to "contest jurisdiction on some points and admit jurisdiction on others."

The ostensible basis for jurisdiction comes from David's answer to paragraph 1.12 of Cathy's petition, which alleged: "There are children who are dependent upon either or both spouses. Support for the dependent children should be set pursuant to the Washington State Child Support Schedule." In his answer to the petition, David's attorney checked various lines for "admitted" and "denied" on a form. He checked "admitted" in response to paragraph 1.12, then noted on the form's next page that his denials of certain provisions of the petition were because: "This court has no jurisdiction over [David] because [David] has never been physically present in the state of Washington. [David] does not choose to consent to the jurisdiction of this court either." David continued to contest jurisdiction in later pleadings, including a motion to dismiss, a motion to revise the court commissioner's denial of that motion, and an amended answer to the petition.

Consent to jurisdiction may be implied by the service member's general appearance in court; and even where the member has objected to personal jurisdiction under CR 12(b), as David did, "he may waive the defense of lack of jurisdiction by seeking affirmative relief, thereby invoking the jurisdiction of the court." *In re Marriage of Parks*, 48 Wn. App. 166, 170, 737 P.2d 1316, *review denied*, 109 Wn.2d 1006 (1987). *Accord Deal v. Deal*, 496 So. 2d 1175 (La. App. 1986).

■■ We disagree that David consented to jurisdiction or waived his jurisdictional challenge. By agreeing with Cathy's assertion that the parties have children for whom support should be set according to the standard schedule, he did not seek affirmative relief.

The cases cited by Cathy are distinguishable. The husband in *Parks* did not contest jurisdiction initially, but prayed for a division of marital property and for resolution of child custody and maintenance issues, *Parks*, 48 Wn. App. at 171; the husband in *Deal* requested child custody, a reduction in support, and a finding that the military pension was solely his own property. *Deal*, 496 So. 2d at 1176. Unquestionably, those husbands were seeking affirmative relief, thereby submitting themselves to the jurisdiction of the court. *See also Livingston v. Livingston*, 43 Wn. App. 669, 719 P.2d 166 (party who asks court to enforce visitation seeks affirmative relief), *review denied*, 107 Wn.2d 1005 (1986). Here, however, David merely acknowledged his responsibility to provide for the children, as Cathy proposed. He did not seek affirmative relief, and therefore did not waive his challenge to the court's jurisdiction. *See In re Marriage of Markowski*, 50 Wn. App. 633, 749 P.2d 754 (1988). Nor did David consent to jurisdiction by asking the court to award him attorney's fees. *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 765-66, 757 P.2d 933 (1988), *cert. denied*, 490 U.S. 1004 (1989). Thus, the trial court lacked the necessary personal jurisdiction over David to divide his Navy pension under the USFSPA.

### III

David also challenges the trial court's jurisdiction to distribute the remaining marital property and order child support. This issue requires us to determine whether David falls within the long-arm statute, RCW 4.28.185(1).

■ Three factors must coincide if the courts of this state are to acquire in personam jurisdiction over a nonresident

defendant: (1) The nonresident defendant must purposefully do some act or consummate some transaction in this state; (2) the cause of action must arise from, or be connected with, the act or transaction; and (3) Washington's assumption of jurisdiction "must not offend traditional notions of fair play and substantial justice" in light of the activity in the forum state, the relative convenience of the parties, the benefits and protections of our laws afforded the respective parties, and the "basic equities of the situation." *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963).

Cathy relies on David's non-payment of child support as a tortious act conferring jurisdiction. RCW 4.28.185(1)(b). *In re Custody of Miller*, 86 Wn.2d 712, 719, 548 P.2d 542 (1976), indeed held that "[n]onsupport constitutes a tortious act" for purposes of the long-arm statute, and Washington can assert jurisdiction over a nonresident father failing to pay support. David counters that the *Miller* case was superseded by a United States Supreme Court decision, *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978), and that in any event, he did not fail to make support payments until *after* the lawsuit commenced, so the action cannot be said to have arisen out of a tortious act. We note that the *Miller* case was concerned with in personam jurisdiction over a nonresident parent for purposes of deciding child custody, and David does not challenge custody jurisdiction here.

█ We agree with David that his cessation of child support does not create jurisdiction to adjudicate the support and property issues. After Cathy took the children to Washington, David established an account with the Office of Support Enforcement in June of 1992 and began making support payments to that account. Cathy commenced this dissolution action in October, 1992. It was not until April of 1993 that David stopped making support payments. Therefore, Cathy's lawsuit came before the tortious act rather than arising from it, and it does not provide a basis for jurisdiction.

■■ *Kulko* provides further support for David's position. The United States Supreme Court held in *Kulko* that California could not exercise in personam jurisdiction over a nonresident, nondomiciliary parent of minor children domiciled within California. *Kulko*, 436 U.S. at 86. The facts of *Kulko* are much like those here: A mother and father resided with their minor children in one state (New York) until the parents separated and the mother took the children to another state (California). The parties were then divorced, and initially the children lived in New York with their father during the school year. *Kulko*, 436 U.S. at 87. Later, after both children decided they would rather live with their mother in California, the mother filed an action in California seeking to modify the custody arrangements and to increase the father's child support. The father moved to quash service of the summons, arguing that he had not had the necessary "minimum contacts" with California for that state to acquire in personam jurisdiction over him. *Kulko*, 436 U.S. at 88. His only contacts with California were: the parties' wedding had occurred there years earlier during a brief military stopover, he had been there one other time on a stopover, and he had agreed that one of the children could move to California to live with her mother. *Kulko*, 436 U.S. at 93. "*Kulko* clearly stands for the proposition that a parent's failure to pay child support alone is an insufficient basis upon which to predicate long-arm jurisdiction under [a] . . . tort analysis." *In re Marriage of Yocum*, 73 Wn. App. 699, 705, 870 P.2d 1033 (1994).

The *Kulko* court held that the father's "glancing presence" on two occasions in California did not confer in personam jurisdiction over him, and nor did he, by consenting to his daughter's change of residence, "purposefully avails [him]self of the privilege of conducting activities within the forum State" (California) for purposes of the Due Process Clause of the Fourteenth Amendment. *Kulko*, 436 U.S. at 92-94 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). If anything, the facts of this case are even less supportive of

the forum state's exercise of in personam jurisdiction, because unlike Mr. Kulko, David was not married in the forum state (Washington), nor did he consent to the children's moving here with their mother. David, likewise, has had no more than a "glancing presence" in the forum state. *See Bershaw v. Sarbacher*, 40 Wn. App. 653, 657, 700 P.2d 347 (1985).

Cathy also argues that David purposefully consummated a transaction in Washington, thereby conferring in personam jurisdiction pursuant to RCW 4.85.185(1)(a), by opening an account with the Office of Support Enforcement and paying support for a number of months. We disagree. Mr. Kulko likewise paid child support to his former wife while the children were with her in California. *Kulko*, 436 U.S. at 87. And in *Markowski*, 50 Wn. App. at 637, n.2, Division Three stated, albeit in dictum, that Washington courts lacked personal jurisdiction over a father to adjudicate child support and divide the marital property where he, an Oregon resident, was served with the petition while visiting the children briefly in Washington during the parties' separation, then "liv[ed] with" the terms of a void decree by paying child support and attempting to visit the children. Thus, the payment of child support, by itself, does not vest the court with personal jurisdiction over the nonresident payor.[1]

Washington courts have personal jurisdiction over David for purposes of dissolving the marriage and determining child custody. They have not, however, acquired jurisdiction to divide the Navy pension and other marital property, or order child support. Reversed.

---

[1]Washington no doubt has a legitimate interest in ensuring the support of children residing in this state without unduly disrupting their lives, and like the United States Supreme Court in *Kulko,* we observe that this state's participation in the Uniform Interstate Family Support Act (formerly the Uniform Reciprocal Enforcement of Support Act) may provide a mechanism for enforcing support decrees where the dependent children live in a state that cannot obtain personal jurisdiction over the defendant. *See Kulko*, 436 U.S. at 98-99. The parties have not briefed the issue, and we express no opinion whether that mechanism is available vis-a-vis Washington and the state of Virginia, where David purports to reside. *See* RCW 26.21; VA. CODE ANN. §§ 20-88.32-.82; *Yocum,* 73 Wn. App. at 704-05.

BRIDGEWATER and TURNER, JJ., concur.