# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Robinson*, 2015 IL App (1st) 132345

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MALETA ROBINSON, f/k/a Maleta Marrionneaux-Willis, Petitioner-Appellee, and DEANGELO M. WILLIS, Respondent-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-2345 |
| Filed | May 14, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-D-10726; the Hon. Mark J. Lopez, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Sharon M. Kadas, of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this appeal, we are called upon to address the applicability of the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA) (10 U.S.C. § 1408 (2006)) to the modification of an out-of-state divorce judgment dividing a former military member's pension. Petitioner Maleta Robinson (Maleta) and respondent DeAngelo M. Willis (DeAngelo), a former member of the United States Marine Corps, divorced in Michigan in 2009. As part of the consent judgment entered by the Michigan court, Maleta received 25% of DeAngelo's military pension. Maleta then moved to Illinois and sought to register the Michigan judgment in Cook County. After DeAngelo did not appear in Cook County, the circuit court registered the Michigan order and entered an order dividing DeAngelo's military retirement pay. DeAngelo filed a motion to vacate that order, alleging that the Illinois circuit court lacked personal jurisdiction over him. The circuit court denied DeAngelo's motion and entered another order dividing DeAngelo's pension.

¶ 2    DeAngelo appeals, asserting that the Illinois circuit court lacked personal jurisdiction to divide his pension under FUSFSPA, which empowers state courts to divide military retirement pay in divorce proceedings. We agree that FUSFSPA applied to the circuit court's actions in this case and that the trial court erred in determining that DeAngelo consented to personal jurisdiction. We vacate the trial court's order dividing DeAngelo's military pension and remand for an evidentiary hearing to determine whether DeAngelo was a resident or domiciliary of Illinois under FUSFSPA.

¶ 3                                I. BACKGROUND

¶ 4    Maleta and DeAngelo married in 1990 and had three children. They resided together in Macomb, Michigan, during their marriage. DeAngelo filed for divorce in 2007 in Michigan.

¶ 5    On January 21, 2009, the circuit court of Macomb County, Michigan, entered a consent judgment of divorce. As part of that judgment, the Michigan court awarded Maleta 25% "of the *marital portion* of [DeAngelo's] military pension and retirement benefits." (Emphasis in original.) The court defined "[t]he marital portion *** as the portion of benefits accumulated from the date of the marriage until the entry of this Judgment."

¶ 6    After the judgment was entered, Maleta moved to Chicago with their two younger children, while DeAngelo moved to Virginia with their oldest child. On June 1, 2010, DeAngelo retired from active duty and began to collect his military pension. In the same month, DeAngelo moved to Georgia.

¶ 7    On November 7, 2011, Maleta filed a petition to register the Michigan judgment in the circuit court of Cook County. Maleta asserted that neither she nor DeAngelo resided in Michigan and asked that the Michigan judgment be registered in Illinois "for the purposes of enforcement." Maleta served DeAngelo with the petition.

¶ 8    On September 25, 2012, while her request to register the Michigan judgment was still pending, Maleta moved for a rule to show cause and sanctions, alleging that DeAngelo failed to comply with the Michigan court's order regarding his military pension. Maleta stated that DeAngelo had refused to pay her the 25% share of his pension as required by the Michigan divorce judgment. Maleta asked that the Illinois circuit court require DeAngelo to pay her the "25% share of all his monthly pension benefits" and 9% interest.

¶ 9        Although he had been served, DeAngelo did not appear to contest the registration of the Michigan judgment or file a responsive pleading to Maleta's motion. Accordingly, on October 2, 2012, the court granted Maleta's request to register the Michigan judgment.

¶ 10       On November 21, 2012, the court enjoined the United States Defense Finance and Accounting Service (USDFAS) from providing DeAngelo with his pension benefits "until further order of the Court." The court also enjoined DeAngelo "from transferring, encumbering, or receiving any lump sum payments or otherwise modifying his pension benefits from [US]DFAS without leave of this Court." The court ordered USDFAS to send "all of [DeAngelo's] future pension benefit payments" to Maleta's attorney, payable to DeAngelo, "until further order of [the] Court."

¶ 11       On March 1, 2013, the court entered an order entitled, "Military Retired Pay Division Order." The order stated that it was being "entered incident to" the Michigan divorce judgment. The order also stated that the court had jurisdiction over DeAngelo "by reason of his domicile in the territorial jurisdiction of the Court during the divorce proceedings." The court found that Maleta was entitled "to a portion of Respondent's United States military retired pay," and awarded Maleta "25 percent of [DeAngelo's] disposable military retired pay."

¶ 12       On March 29, 2013, DeAngelo filed a motion pursuant to section 2-1301 of the Code of Civil Procedure (735 ILCS 5/2-1301 (West 2010)) seeking to vacate the circuit court's March 1, 2013 order. DeAngelo asserted that the circuit court of Cook County lacked personal jurisdiction over him under FUSFSPA because he did not reside in Illinois or maintain a domicile in Illinois. DeAngelo acknowledged that he purchased and registered a car in Illinois but asserted that he bought the car solely for his daughter to use while she attended college in Illinois.

¶ 13       In her response to DeAngelo's motion, Maleta asserted that the Illinois court was required to afford the Michigan divorce judgment full faith and credit. Maleta stated that the March 1, 2013 order "served only to implement the Michigan Judgment as it related to its award of 25% of [DeAngelo's] military pension to [Maleta]." Maleta also asserted that DeAngelo had sufficient contact with Illinois to justify the Illinois circuit court's exercise of jurisdiction. Maleta noted that DeAngelo listed his address as "5824 North Ridge, Chicago, Illinois" to USDFAS, had registered a vehicle with the Illinois Secretary of State at the same address, and had an adult child and a minor child residing in Illinois. Maleta attached copies of DeAngelo's retiree account statement from USDFAS from June 2010 and his 2013 Illinois vehicle registration card, each of which listed his address as "5824 N Ridge, Chicago, IL 60660." Maleta also argued that the circuit court had personal jurisdiction over DeAngelo under section 2-209(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-209(a)(9) (West 2010)) because DeAngelo "fail[ed] to support a *** former spouse who ha[d] continued to reside" in Illinois.

¶ 14       In his reply, DeAngelo argued that section 2-209(a)(9) was inapplicable, because the award of 25% of his pension was not "spousal support" but, rather, a division of property. DeAngelo also stated that the Chicago address he listed with USDFAS and the Illinois Secretary of State was a temporary address he used while he was moving from Virginia to Georgia in 2010.

¶ 15       On June 21, 2013, the circuit court denied DeAngelo's motion to vacate. The court found that DeAngelo "ha[d] 'minimum contacts' with the State of Illinois sufficient that this court has personal jurisdiction over [him]" and that DeAngelo "waived any objection to lack of personal jurisdiction by raising a substantive issue in this matter (whether [Maleta was]

entitled to 25% or 20% of [the] marital portion of [the] pension)." On the same day, the trial court also entered another order entitled, "Military Retired Pay Division Order," which was identical to the March 1, 2013 order of the same name except in one respect: it "awarded [Maleta] 20 percent of [DeAngelo's] disposable military retired pay," instead of 25%. Defendant appeals, arguing that the trial court should have declined jurisdiction over this matter due to lack of personal jurisdiction.

¶ 16                                                    II. ANALYSIS

¶ 17        Maleta has failed to file a response brief in this case. But we will not summarily reverse the circuit court's judgment. Rather, we elect to address the merits of DeAngelo's appeal because the record is simple, and we can resolve the issue presented to us without Maleta's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 18        The trial court below found two bases for jurisdiction over this matter. First, the court ruled that DeAngelo had " 'minimum contacts' " with Illinois. Second, the trial court found that DeAngelo waived any objection to personal jurisdiction by raising a substantive argument concerning the court's order. Both issues require us first to determine whether federal law–namely FUSFSPA–controls the jurisdictional question, or whether our state's long-arm personal-jurisdiction statute applies.

¶ 19                                    A. Whether FUSFSPA Applies to This Case

¶ 20        Whether FUSFSPA is applicable to this action is a question of law we review *de novo*. *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 12. In determining the reach of a federal statute, we begin with its plain language. *Mansell v. Mansell*, 490 U.S. 581, 588 (1989).

¶ 21        Congress passed FUSFSPA in response to the United States Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 232-33 (1981), which held that, under the supremacy clause, a state court could not divide a military retiree's retirement pay in a divorce. Abrogating the holding of *McCarty*, FUSFSPA grants state courts the authority to "treat disposable retired pay payable to a [military] member *** either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1) (2006). The types of "court orders" subject to FUSFSPA include, in pertinent part, "final decree[s] of divorce" and "court ordered *** property settlement[s] incident to such *** decree[s]," which provide for a "division of property" and "provide[ ] for the payment of an amount *** from the disposable retired pay of a [former military] member to the spouse or former spouse of that member." 10 U.S.C. § 1408(a)(2)(B)(iii), (C) (2006). Additionally, FUSFSPA provides that "an out-of-State modification" of a "court order" is unenforceable "unless the court issuing that [modification] has jurisdiction in the manner specified in" section 1408(c)(4). 10 U.S.C. § 1408(d)(7)(A) (2006). "[A]n out-of-State modification" is defined as a court order that "modifies a previous court order under this section" and "is issued by a court of a State other than the State of the court that issued the previous court order." 10 U.S.C. § 1408(d)(7)(B) (2006).

¶ 22        The orders entered by the trial court below fall within the plain language of FUSFSPA. The trial court did more than simply enforce a judgment from a sister state. Each of the trial court's orders substantively ruled on the division of property and, in the process, modified the Michigan court order. The first, entered on March 1, 2013, stated that it was being entered "incident to" the Michigan divorce judgment but "awarded" Maleta "25 percent of

[DeAngelo's] disposable military retired pay." The second, entered on June 21, 2013, was otherwise identical to the first but awarded Maleta 20% of DeAngelo's "disposable retirement pay." By contrast, the Michigan divorce judgment had only awarded Maleta 25% of the "marital portion" of DeAngelo's military retirement pay. Both of the Illinois court's orders modified the Michigan court's division of DeAngelo's retirement pay—the first by expanding the division from the "marital portion" of DeAngelo's retirement pay to DeAngelo's "disposable retirement pay," and the second by changing the award from 25% to 20%.

¶ 23　　Accordingly, we find that the trial court orders, beyond merely enforcing a sister court's judgment, were "out-of-State modification[s]" of a "court order" under FUSFSPA. 10 U.S.C. § 1408(a)(2), (d)(7)(A) (2006). As such, they could only be enforced if the trial court met the jurisdictional standard of section 1408(c)(4). 10 U.S.C. § 1408(c)(4), (d)(7)(A) (2006). Without question, FUSFSPA governs this action.

¶ 24　　　　　　　　　　　　B. Whether FUSFSPA Preempts State Law

¶ 25　　Having found FUSFSPA applicable, we must next consider which statute–federal, state, or both–governs the question of personal jurisdiction. This, too, is a question of law subject to *de novo* review. *Performance Marketing*, 2013 IL 114496, ¶ 12.

¶ 26　　Our state's personal-jurisdiction statute, often referred to as the Illinois long-arm statute, is broad in scope. See 735 ILCS 5/2-209 (West 2010). Our statute delineates 14 different acts that would submit a party to personal jurisdiction in this state and describes several characteristics of an individual or business that would subject it to personal jurisdiction. See 735 ILCS 5/2-209(a), (b), (b-5) (West 2010). It goes further still in subsection (c), broadly providing that an Illinois court "may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2010); see *Russell v. SNFA*, 2013 IL 113909, ¶¶ 29-30. The limits of personal jurisdiction under due-process principles have become known as the "minimum contacts" test, which begins any analysis of the Illinois long-arm statute. See *Russell*, 2013 IL 113909, ¶ 36 ("This court recognizes the 'minimum contacts' test as the threshold issue in any personal jurisdiction challenge in Illinois.").

¶ 27　　FUSFSPA, in contrast, contains a personal-jurisdictional provision that is far more limited in scope. FUSFSPA limits the reach of a state court to retirees who reside in the state, are domiciled in the state, or consent to the court's jurisdiction. 10 U.S.C. § 1408(c)(4) (2006). There is no question that, on the question of personal jurisdiction over matters relating to the division of military retirement pay in divorce proceedings, federal law conflicts with our state's long-arm statute. A state law that conflicts with federal law is preempted to the extent of the conflict. *Performance Marketing*, 2013 IL 114496, ¶ 14. We hold that, to the extent that Illinois's long-arm statute conflicts with the FUSFSPA jurisdictional standard, our state law must yield to the controlling federal law. U.S. Const., art. VI, cl. 2; *Performance Marketing*, 2013 IL 114496, ¶ 14.

¶ 28　　While this appears to be a question of first impression in Illinois, this conclusion finds support in every case to have considered the question across the country. The United States Supreme Court, without expressly so holding, seemed to take it for granted that section 1408(c)(4) of FUSFSPA "pre-empts state law." *Mansell*, 490 U.S. at 591 (noting that purpose of FUSFSPA jurisdictional limitations was to "prevent[ ] spouses from forum shopping for a State with favorable divorce laws"). Many other courts directly confronting the issue have

likewise held that section 1408(c)(4) of FUSFSPA preempted their state's long-arm jurisdictional statutes. *In re Marriage of Booker*, 833 P.2d 734, 738 n.9 (Colo. 1992); *Petters v. Petters*, 560 So. 2d 722, 725 (Miss. 1990); *Davis v. Davis*, 284 P.3d 23, 26 (Ariz. Ct. App. 2012); *Sparks v. Caldwell*, 723 P.2d 244, 245 (N.M. 1986); *Wagner v. Wagner*, 768 A.2d 1112, 1118 (Pa. 2001); *Pender v. Pender*, 945 S.W.2d 395, 396-97 (Ark. Ct. App. 1997); *In re Marriage of Hattis*, 242 Cal. Rptr. 510, 413 (Cal. Ct. App. 1987); *Mortenson v. Mortenson*, 409 N.W.2d 20, 22 (Minn. Ct. App. 1987). We hold that FUSFSPA's stricter requirements for personal jurisdiction control in this case.

¶ 29                    C. Whether Personal Jurisdiction Exists Under FUSFSPA

¶ 30    Having found that FUSFSPA, and FUSFSPA alone, governs the question of personal jurisdiction, we next consider whether the trial court had personal jurisdiction over DeAngelo in this case. Again, FUSFSPA permits a state court to divide a military member's retirement pay if that court has jurisdiction over the member "by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court." 10 U.S.C. § 1408(c)(4) (2006).

¶ 31    The trial court articulated two reasons for finding that it had personal jurisdiction over DeAngelo. First, it held that DeAngelo had " 'minimum contacts' " with Illinois. As we have noted above, that finding is relevant only to an analysis of personal jurisdiction under our state long-arm statute. 735 ILCS 5/2-209(c) (West 2010); *Russell*, 2013 IL 113909, ¶ 36. It has no place in a discussion of personal jurisdiction under the applicable federal law.

¶ 32    Second, the trial court found that DeAngelo "waived any objection to lack of personal jurisdiction by raising a substantive issue in this matter (whether Maleta is entitled to 25% or 20% of marital portion of pension)." It is not clear to us whether the trial court was referring to the third basis for jurisdiction under FUSFSPA—that DeAngelo "consent[ed] to the jurisdiction of the court" (10 U.S.C. § 1408(c)(4) (2006))—or whether the trial court was referencing Illinois law. Ultimately, we do not see a difference between the two in our resolution of this issue, because we find that DeAngelo did not consent to the personal jurisdiction of the court in any event.

¶ 33    No Illinois court has interpreted the "consent" required by section 1408(c)(4)(C) of FUSFSPA. Most courts in other states have held that a party impliedly consents to jurisdiction under FUSFSPA where he or she waives a challenge to the court's personal jurisdiction under state law. *E.g.*, *Booker*, 833 P.2d at 740; *Gowins v. Gowins*, 466 So. 2d 32, 34-35 (La. 1985); *Pierce v. Pierce*, 2012-CA-01966-SCT (¶ 22) (Miss. 2014); *Davis v. Davis*, 284 P.3d 23, 27 (Ariz. Ct. App. 2012); *Judkins v. Judkins*, 441 S.E.2d 139, 140 (N.C. Ct. App. 1994); *Seeley v. Seeley*, 690 S.W.2d 626, 628 (Tex. App. 1985); *Blackson v. Blackson*, 579 S.E.2d 704, 712 (Va. Ct. App. 2003); *In re Marriage of Peck*, 920 P.2d 236, 239 (Wash. Ct. App. 1996); *Kildea v. Kildea*, 420 N.W.2d 391, 394 (Wis. Ct. App. 1988). Others have suggested that a defendant must affirmatively state his or her "consent" to jurisdiction. See *In re Marriage of Akins*, 932 P.2d 863, 867-68 (Colo. App. 1997); *Davis*, 284 P.3d at 26-27 (recognizing disagreement and collecting cases).

¶ 34    We do not need to pick a side here, because under any view of DeAngelo's actions, he did not "consent" to jurisdiction. Under Illinois law, a party does not waive a challenge to a court's personal jurisdiction if the party challenges the court's jurisdiction before filing a motion or

other responsive pleading. 735 ILCS 5/2-301(a) (West 2010); *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 24. DeAngelo undoubtedly challenged the trial court's personal jurisdiction prior to seeking affirmative relief from the court. His section 2-1301 motion, his first action in the Illinois proceedings, argued that the court lacked personal jurisdiction over him. His subsequent request for a modification to the court's award did not waive his challenge to the trial court's jurisdiction in this case. Obviously, DeAngelo did not affirmatively state his consent to jurisdiction, either; he did the precise opposite. Thus, we find that DeAngelo did not consent to the Illinois court's jurisdiction by requesting affirmative relief or in any other way.

¶ 35    However, Maleta could establish jurisdiction over DeAngelo under FUSFSPA if DeAngelo were a resident or domiciliary of Illinois. 10 U.S.C. § 1408(c)(4)(A), (B) (2006). While DeAngelo contends that he maintains his residence and domicile in Georgia, Maleta submitted some evidence to the contrary. In her response to DeAngelo's section 2-1301 motion, Maleta included copies of DeAngelo's USDFAS account statement from June 2010 and DeAngelo's 2013 vehicle registration card, both of which indicated that DeAngelo had a Chicago address. DeAngelo contended that this address was a temporary one he used during his move from Virginia to Georgia. The trial court never deliberated specifically over these conflicting facts, and we will not do so for the first time on appeal. Instead, we must remand for an evidentiary hearing regarding DeAngelo's residence and domicile under FUSFSPA. See *Viktron Ltd. Partnership v. Program Data Inc.*, 326 Ill. App. 3d 111, 116 (2001) (where evidence regarding personal jurisdiction conflicts, reviewing court must remand for evidentiary hearing).

¶ 36    We recognize that, in its March 1, 2013 order, the trial court stated that it had jurisdiction over DeAngelo "by reason of his domicile in the territorial jurisdiction of the Court during the divorce proceedings." We do not regard this finding as conclusive for three reasons. First, the order references DeAngelo's domicile *at the time of the divorce proceedings*, which began in 2007 and ended in January 2009. FUSFSPA's reference to the service member's domicile does not date back to any point in the past; in its use of the present tense, FUSFSPA requires that the service member be domiciled in the forum state at the time jurisdiction over that service member is sought—in this case, November 2011, when Maleta filed her petition to register the Michigan decree in Illinois. 10 U.S.C. § 1408(c)(4)(B) (2006) (court may not divide service member's pension "unless the court has jurisdiction over the member by reason of *** his domicile in the territorial jurisdiction of the court"); see also *Mortenson*, 409 N.W.2d at 23; *Tarvin v. Tarvin*, 232 Cal. Rptr. 13, 16 (Cal. Ct. App. 1986) (past domicile or residency in forum state is insufficient to confer jurisdiction under section 1408(c)(4)). Second, the trial court entered that order before DeAngelo had filed his section 2-1301 motion challenging the court's jurisdiction under FUSFSPA. The trial court had not been presented with the conflicting evidence regarding DeAngelo's domicile and lacked the benefit of adversarial presentation on that issue. Finally, in the court's order denying the section 2-1301 motion—the only order under review in this appeal—the court did not reference DeAngelo's domicile; it merely referenced "minimum contacts" and waiver. Thus, the brief reference to "domicile" in the March 1, 2013 order does not eliminate the need for an evidentiary hearing where the court can consider the conflicting evidence and apply the appropriate legal standard.

¶ 37                              III. CONCLUSION

¶ 38        For the reasons stated, we vacate the judgment of the circuit court. In order to divide
        DeAngelo's military pension, the circuit court was required to have jurisdiction under section
        1408(c)(4) of FUSFSPA. The circuit court erred in concluding that DeAngelo had consented to
        its jurisdiction by raising a substantive issue after his challenge to the court's personal
        jurisdiction. We remand this case to the circuit court for a determination of whether defendant
        maintained his residence or domicile in Illinois pursuant to section 1408(c)(4) of FUSFSPA.

¶ 39        Vacated and remanded.